P.K., by and through his
legal guardians ELEFTHERIA
KOUTZIS and KYRIACOS KOUTZIS,

      Plaintiffs,

      v.

HAROLD MELLEBY, JR.,
individually and in his
official capacity; EASTERN
REGIONAL HIGH SCHOOL; EASTERN
CAMDEN COUNTY REGIONAL SCHOOL
DISTRICT; EASTERN CAMDEN
COUNTY REGIONAL BOARD OF
EDUCATION, and ROBERT M.
TULL, JR., individually and
in his official capacity,

      Defendants.

Civil No. 18-485 (NLH/DEA)

**OPINION**

<u>**APPEARANCES**</u>:

LILIA LONDAR
DANIEL EDWARD RYBECK
GEORGIOS FARMAKIS
WEIR & PARTNERS LLP
215 FRIES MILL ROAD
2ND FLOOR
TURNERSVILLE, NJ 08012

    *Attorneys for Plaintiff P.K., by and through his legal*
*guardians, Eleftheria and Kyriacos Koutzis.*

RICHARD L. GOLDSTEIN
EDWARD J. PARK
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PA
15000 MIDLANTIC DRIVE
SUITE 200
P.O. BOX 5429
MOUNT LAUREL, NJ 08054

    *Attorneys for Defendants Harold Melleby, Jr., Eastern*

*Regional High School, Eastern Camden County Regional School
District, Eastern Camden County Regional Board of Education, and
Robert M. Tull.*

**HILLMAN, District Judge**

This case is an Individual with Disabilities Education Act
("IDEA") and 42 U.S.C. § 1983 case concerning whether a free
appropriate public education ("FAPE") was given to a minor
plaintiff, P.K., and whether an allegedly false police report
made by school officials violated Plaintiff's constitutional or
statutory rights. Presently before the Court is Defendants'
Motion to Dismiss, Plaintiff's Cross-Motion to Amend the
Complaint ("Motion to Amend"), and Plaintiff's Amended Cross-
Motion to Amend the Complaint ("Amended Motion to Amend"). For
the reasons discussed herein, the Court will grant in part and
deny in part Defendants' Motion to Dismiss, deny without
prejudice Plaintiff's Motion to Amend, and grant in part and
deny in part without prejudice Plaintiff's Amended Motion to
Amend.

<u>**BACKGROUND**</u>

We take our brief recitation of the facts from Plaintiff's
Complaint and proposed Amended Complaint. Plaintiff, P.K., was
a freshman at Defendant Eastern Regional High School ("Eastern")
in 2017. His parents are Kyriacos and Eleftheria Koutzis
(respectively, "Mr. Koutzis" and "Mrs. Koutzis"). Defendant
Eastern is within the Defendant Eastern Camden County Regional

School District (the "District") and is included within the
purview of Defendant Eastern Camden County Regional School
District Board of Education (the "Board").  Defendant Robert M.
Tull, Jr. is the Principal of Eastern and Harold Melleby, Jr. is
the Superintendent of the District.

On August 29, 2017, Mrs. Koutzis sent a letter to
Defendants detailing that P.K.'s psychiatrist, Adam D. Hauser,
M.D., diagnosed P.K. with (1) panic disorder, (2) agoraphobia,
and (3) generalized anxiety disorder.  The letter also stated
that Dr. Hauser indicated P.K. expressed symptoms consistent
with autism spectrum disorder.  Defendants did nothing in
response to this letter.  Mrs. Koutzis sent another letter on
October 24, 2017.  In that letter, Mrs. Koutzis indicated that
Dr. Hauser had additionally diagnosed P.K. with (a) autism
spectrum disorder and (b) attention-deficit disorder and
requested Defendants prepare a Section 504 Individual
Accommodation Plan (an "IAP").  Plaintiff alleges Defendants
created a "sham" IAP in November 2017, which did not address
either P.K.'s autism or his anxiety.  (Pl.'s Compl. ¶ 15.)

On December 4, 2017, Defendant Tull found P.K. and another
student in the bathroom at Eastern.  The other student was
smoking an electronic cigarette.  Defendant Tull ordered the two
students to come with him to his office.  Defendant Tull alleged
while the three were walking to his office that P.K. called

Defendant Tull a "bitch." (Pl.'s Compl. ¶ 22.) P.K. denies
calling Defendant Tull a "bitch." A search of P.K.'s belongings
revealed he did not possess an electronic cigarette. Defendant
Tull suspended P.K. for two days.

Mrs. Koutzis was told that P.K. had received a two-day
suspension, asked to pick him up, and advised the suspension
could be appealed to Defendant Melleby. She appealed. The
appeal was set for December 8, 2017. In advance, Mrs. Koutzis
wrote a letter to Defendant Melleby stating the following:

- P.K.'s suspension was without justification;

- P.K.'s suspension was discriminatory; and

- Defendants had not accommodated P.K.'s autism, specifically
  the social communication disorder aspect, which "prevents
  P.K. from processing intimidating language appropriately."

(Pl.'s Compl. ¶ 30.a.-c.)

P.K., his parents (Mr. Koutzis by phone), and Defendants
Melleby and Tull were present at the meeting on December 8, 2017
(the "Appeal"). According to Plaintiff's allegations, the
meeting was unproductive. Plaintiff claims Defendant Melleby
was unprofessional and raised his voice, interrupted Mrs.
Koutzis, and slammed books. P.K. allegedly called Defendant
Melleby a "baby," but did not threaten him. (Pl.'s Compl. ¶
38.) Defendant Melleby ordered Plaintiff and Mrs. Koutzis to
"vacate the premises and stated the police were being called."

(Pl.'s Compl. § 41.)  P.K. left, Mrs. Koutzis stayed.  After
Defendants Melleby and Tull threatened to call the police a
second time, Mrs. Koutzis left the office.  Plaintiff and Mrs.
Koutzis exited the building, but could not leave the premises
because their car was "intentionally blocked by Defendants'
employee's car."  (Pl.'s Compl. ¶ 45.)

The alleged argument between Defendant Melleby and Mrs.
Koutzis continued outside.  Defendant Melleby allegedly insulted
both Plaintiff and his mother.  Shortly thereafter, the Voorhees
Police Department ("VPD") arrived and stated they were
responding to a call that Plaintiff had a gun.  Plaintiff was
put on the ground, searched, handcuffed, and detained.  No gun
was found.  Plaintiff was released from police custody and
allowed to return home.  The VPD did not file any criminal
charges against Plaintiff at that time.

On December 12, 2017, Defendant Melleby sent a letter to
Plaintiff and his parents advising them that Plaintiff was to
start homebound instruction immediately because of his
"misconduct and actions."  (Pl.'s Compl. ¶ 54.)  Further,
Defendant Melleby stated Plaintiff's "enrollment status w[ould]
be reviewed following the adjudication of charges filed with the
[VPD]."  (Pl.'s Compl. ¶ 55.)  Plaintiff claims this was a
knowingly false and malicious statement, as no charges had been
filed at that time.

5

Defendant Melleby also advised Plaintiff and his parents that Plaintiff had the right to appeal this decision at the Board's meeting of December 20, 2017 (the "Board Meeting"). On December 19, 2017, Plaintiff's counsel advised Defendant Melleby that Plaintiff would be appealing this decision at the Board Meeting. On December 20, 2017, Plaintiff's counsel appeared on his behalf at the Board Meeting. Plaintiff claims his counsel was limited in his ability to cross-examine Defendant Tull by the Board's solicitor, Anthony Padovani. Plaintiff also claims that Defendant Tull stated Plaintiff did not have a gun and that aggravated assault charges had been filed on December 8, 2017. Defendant Tull stated he believed there was "some sort of miscommunication with the police." (Pl.'s Compl. ¶ 66.)

On December 22, 2017, the VPD called Mrs. Koutzis and notified her that Defendant Melleby had filed a criminal citizen's complaint against P.K. for third-degree terroristic threat. P.K. was processed on December 26, 2017 and formally charged. According to Defendants, Plaintiff "through his counsel, accepted a plea deal analogous to a pretrial intervention in adult criminal proceedings." (Defs.' Mot. to Dismiss 7.) No party provides documentation evidencing this assertion.

On December 8, 2017, Plaintiff was banned from school premises and received homebound instruction. Plaintiff

complains of the adequacy of homebound instruction, as it did
not include in-person lessons, devices compatible with the
software used for homebound instruction, or an IAP.

On January 12, 2018, Mr. and Mrs. Koutzis filed a complaint
on behalf of Plaintiff P.K. against Defendants.  The Complaint
alleges ten counts under 42 U.S.C. § 1983 - including a Monell
claim, (Counts I, II, and VIII), 42 U.S.C. § 1985 (Count III),
the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §
12132 (Count IV), the Individuals with Disabilities Education
Act (the "IDEA"), 20 U.S.C. § 1400, et seq. (Count IX), the
Rehabilitation Act, referred to here also as Section 504 (Count
X), common law false arrest (Count V), and intentional and
negligent infliction of emotional distress (Count VI and VII).

That same day, Plaintiff requested the Court to enter a
temporary restraining order or preliminary injunction requiring
Defendants to reinstate him to Eastern immediately.  This Court
held a hearing on this application on January 23, 26, and 29
2018 as well as on February 26, 2018.  During those hearings,
representations were made by counsel, but no live testimony was
taken.  Testimony was submitted in the form of affidavits as
requested by the Court.  Of relevance to the matters presently
under consideration, the Court preliminarily determined that
Defendants had not complied with statutory requirements as to
Plaintiff's indefinite suspension and that, as a result,

exhaustion of administrative remedies was excused as to that
claim. As a result of these proceedings, the parties agreed to
reinstate Plaintiff to Eastern immediately and agreed to prepare
an IEP for Plaintiff, subject to certain steps which Defendants
claim Plaintiff has yet to take. (Defs.' Mot. to Dismiss 7.)
Defendants state Plaintiff is still currently enrolled in
Eastern. (Defs.' Mot. to Dismiss 7.)

On November 30, 2018, Defendants filed their Motion to
Dismiss. On January 15, 2019, Plaintiff filed the Motion to
Amend. On March 25, 2019, Plaintiff filed the Amended Motion to
Amend. All motions have been fully briefed and are ripe for
adjudication.

## DISCUSSION

### A.    Subject Matter Jurisdiction

This Court has subject matter jurisdiction over this action
pursuant to 28 U.S.C. §§ 1331 and 1367.

### B.    Standard for Motion to Dismiss

When considering a motion to dismiss a complaint for
failure to state a claim upon which relief can be granted
pursuant to Federal Rule of Civil Procedure 12(b)(6), a court
must accept all well-pleaded allegations in the complaint as
true and view them in the light most favorable to the plaintiff.
Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well
settled that a pleading is sufficient if it contains "a short

and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a
> court must take three steps.  First, the court must
> "tak[e] note of the elements a plaintiff must plead to
> state a claim."  Second, the court should identify
> allegations that, "because they are no more than
> conclusions, are not entitled to the assumption of
> truth."  Third, "whe[n] there are well-pleaded factual
> allegations, a court should assume their veracity and
> then determine whether they plausibly give rise to an
> entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009)).  A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public

record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014)

(citing Pension Benefit Guar. Corp. v. White Consol. Indus.,

Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks

"not whether a plaintiff will ultimately prevail but whether the

claimant is entitled to offer evidence to support the claim."

Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416

U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our

decision in Twombly expounded the pleading standard for 'all

civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d

203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in

the coffin for the 'no set of facts' standard that applied to

federal complaints before Twombly."). "A motion to dismiss

should be granted if the plaintiff is unable to plead 'enough

facts to state a claim to relief that is plausible on its

face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at

570).

**C. Motion to Dismiss**

Defendants' Motion to Dismiss can be categorized into three

overall arguments. First, Defendants argue Plaintiff's IDEA and

Section 504 claims should be dismissed because of Plaintiff's

failure to exhaust administrative remedies. Second, Defendants

argue Plaintiff's claims stemming from the alleged false arrest

should be dismissed because of application of the Heck doctrine

10

or because no state action was involved.  Third, Defendants
argue Plaintiff's state law tort claims should be dismissed
because Plaintiff failed to file a timely notice of claim.
Plaintiff opposes these arguments.  The Court will address each
of these overall arguments in turn.

        a. The IDEA and Section 504 Claims

    Defendants argue that both the IDEA and Section 504 claims
should be dismissed for failure to exhaust administrative
remedies.  Defendants argue that Plaintiff inappropriately
bypassed an administrative hearing, instead filing his Complaint
directly in federal court.  In opposition, Plaintiff asserts it
was proper to file his Complaint in federal court, as he was not
afforded due process and thus was excused from exhaustion of
administrative remedies.

    It appears the parties agree: Plaintiff has not exhausted
administrative remedies as normally required for his IDEA and
IDEA-related Section 504 claims.  The law is also clear: "the
policy of requiring exhaustion of remedies in the Disabilities
Education Act is a strong one."  Komninos v. Upper Saddle River
Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994).  In fact, in the
Third Circuit, "exhausting the IDEA's administrative process is
required in order for the statute to 'grant[] subject matter
jurisdiction to the district court[].'"  Batchelor v. Rose Tree
Media Sch. Dist., 759 F.3d 266, 272 (3d Cir. 2014) (quoting

Komninos, 13 F.3d at 778 (alterations in original)).  Even so,
"some exceptions have been recognized," which allow a court to
excuse a lack of exhaustion.  Id.  Those exceptions, however,
are narrow and limited only to the following circumstances:

- If exhaustion would be futile or inadequate;

- If the question for review is purely legal;

- If the underlying administrative agency "cannot grant
  relief"; or

- If "exhaustion would work 'severe or irreparable harm' upon
  a litigant."

Beth V. by Yvonne V. v. Caroll, 87 F.3d 80, 89 (3d Cir. 1996)
(quoting Komninos, 13 F.3d at 778).  It is only the first of
these scenarios which Plaintiff asserts applies in this matter.

    Before addressing the question of exhaustion, it is
important to describe the basis of the claims, as different
violations require different methods of exhaustion under New
Jersey law, which is controlling on the question of exhaustion.
Two claims are made under IDEA and Section 504.  First,
Plaintiff complains that Defendants both failed in identifying,
evaluating, and creating an IEP for Plaintiff.  Second,
Plaintiff claims Defendants failed to appropriately discipline
him.

    The Court has previously determined, upon prompting by

Defendants' former counsel at the January 26, 2018 hearing, that Plaintiff's claims based in discipline were expressly excused from the administrative exhaustion requirement. The Court found that it was excused under the futility exception because Defendants had failed to follow – in multiple respects – New Jersey law for the discipline imposed. Accordingly, the Court will not dismiss these claims for failure to exhaust administrative remedies.[1]

The complaints as to whether Defendants' satisfied their IEP obligations for Plaintiff are, however, factually independent and have different exhaustion requirements. For those claims, a "party may elect to have the complaint investigated by the state educational agency, see 34 C.F.R. § 300.661, or avail itself of an 'impartial due process hearing,' 20 U.S.C. § 1415(f)." M.G. v. Crisfield, 547 F. Supp. 2d 399, 412 (D.N.J. 2008) (quoting A.W. v. Jersey City Public Schs., 486 F.3d 791, 802 (3d Cir. 2007)). As stated supra, it is undisputed that Plaintiff did not avail himself of either avenue of exhaustion.

It is also clear that Plaintiff cannot assert that exhaustion would be futile as to this claim. There can be no

---

[1] Defendants' request could be considered one for reconsideration. However, Defendant's request would be nearly a year late. As such, the Court need not and will not reconsider its previous ruling on this issue.

allegations of due process violations nor failures on Defendants

part concerning due process because Plaintiff did not file a

complaint initiating an investigation or due process hearing.

See N.J. ADMIN. CODE § 6A:14-2.7 (describing the process for

requesting a due process hearing); N.J. ADMIN. CODE § 6A:14-9.2

(describing the process for a complaint investigation).  Thus,

the Court must dismiss those IDEA and Section 504 claims for

lack of subject matter jurisdiction.  See Batchelor, 759 F.3d at

272 ("In the normal case, exhausting the IDEA's administrative

process is required in order for the statute to 'grant[] subject

matter jurisdiction to the district court[].'" (Komninos, 13

F.3d at 778 (alterations in original)).[2]

    Defendants also argue that the remaining IDEA and Section

504 claims are moot because Plaintiff's requested relief has

been given.  Plaintiff argues those claims are not moot because

it is requesting attorneys' fees in conjunction with those

_____

[2] The Court notes it has also considered the fact that Defendants
agreed during the January 23, 2018 hearing before this Court,
through prior counsel, to satisfy its IEP obligations with
Plaintiff.  Obviously, this concession is in tension with the
fact that Defendants assert the IEP claims should be dismissed
for lack of exhaustion.  In other words, it would appear
Defendants' agreement to complete an IEP for Plaintiff would
constitute a waiver of its exhaustion argument.  Although
Plaintiff did not argue this point, the Court holds that this
agreement does not constitute waiver, because the exhaustion
requirement is jurisdictional in nature and cannot be waived.
In re Morrissey, 717 F.2d 100, 102 (3d Cir. 1983) (noting that
lack of jurisdiction is non-waivable).

claims.  Ignoring, for the moment, the issue of attorneys' fees,
the Court notes that Defendants' agreement to give Plaintiff
this relief does not moot a claim, just as an admission of
liability would not moot a claim.  Instead of filing a motion to
dismiss, Defendants should file, if Plaintiff consents, a joint
stipulation of dismissal.  Moreover, because the Court will
grant Plaintiff's request to add attorneys' fees, not all relief
requested has been granted.  Therefore, the claim is still live.
Accordingly, the Court will deny Defendants' Motion to Dismiss
as it relates to the IDEA and Section 504 claims on disciplinary
issues and grant it as it relates to the IDEA and Section 504
claims on the IEP issue.

   b. <u>The False Arrest Claims</u>[3]

  Plaintiff asserts claims under § 1983, § 1985, and the ADA
for Plaintiff's allegedly false arrest.[4]  Defendants argue all
claims stemming from the allegedly false report or complaint
should be dismissed because either (1) the <u>Heck</u> doctrine bars
those claims or (2) the reporting of a crime to the police is
not state action.  Plaintiffs' opposition is solely focused on
the application of the <u>Heck</u> doctrine.  Plaintiffs assert the

---

[3] Based on the Court's ruling here, the Court finds that
Defendants' qualified immunity argument is moot.

[4] The Court notes that Plaintiff also asserts a false arrest
common law claim.  The Court will address this claim <u>infra</u>.

<u>Heck</u> doctrine does not apply because the false arrest claims concern statements made to the police on December 8, 2017, not the criminal complaint filed by Defendant Melleby on December 22, 2017.  It was only, according to Plaintiff's, the criminal complaint that could have led to the alleged plea deal and consequent application of the <u>Heck</u> doctrine.

Before addressing these claims, the Court must first address the argument concerning the <u>Heck</u> doctrine.  The factual predicate for this argument is that Plaintiff pled guilty on June 22, 2018 to the crime he was charged with on December 22, 2017.  Obviously, based on the time the complaint here was filed, this assertion is not contained in Plaintiff's Complaint.  While it is true that in ruling on a motion to dismiss, a court has "'discretion to address evidence outside the complaint . . . .,'" a court "'may [only] consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" <u>CitiSteel USA, Inc. v. Gen. Elec. Co.</u>, 78 F. App'x. 832, 835 (3d Cir. 2003) (quoting <u>Pryor v. Nat'l Collegiate Athletic Ass'n</u>, 288 F.3d 548, 559 (3d Cir. 2002); <u>PBGC v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993)).  The factual predicate that Defendants rely upon for this argument is not contained in an undisputedly authentic document, but is instead contained in argument in their brief.  As such, the Court cannot consider

Defendants' assertion and, by extension, their argument.
Accordingly, the Court will not consider the application of the
Heck doctrine to any of the false arrest claims.

### i. The § 1983 Claims

Plaintiff brings three claims: a § 1983 claim, § 1983
conspiracy claim, and § 1983 municipal liability claim, a Monell
claim.  Defendants argue there has been no state action, so any
claims under § 1983 must be dismissed.  A claim under 42 U.S.C.
§ 1983 does in fact require state action.  See Boyce v. Eggers,
513 F. Supp. 2d 139, 144 (D.N.J. 2007) ("Under 42 U.S.C. § 1983,
a defendant must have caused a constitutional violation 'under
color of law' to be civilly liable for that violation.  Because
the Constitution's state action requirement is identical to the
'under color of law' requirement in 42 U.S.C. § 1983, . . . the
analysis of whether [the defendant] was acting under color of
law will inform both whether she is suable under § 1983 and
whether any violation of the Constitution occurred." (citation
omitted)).

Without more, a state or municipal employee reporting
suspected criminal conduct to the police is not state action.
See id. ("There is not [sic] merit to [the p]laintiff's argument
that [the defendant] was acting under color of law when she
filed her complaint merely because she was employed by [a
b]orough at the time.").  As the court in Boyce explained:

It is clear that she was complaining to the police and
filing a complaint in the same manner as would any
private citizen.  There is no allegation that she was
under the direction of her employer or used her position
in any way to effectuate the filing.  There is no
allegation, nor any evidence, that her usual job duties
involved any of the tasks she performed to file the
criminal complaint.  Nor is there evidence indicating
that any power associated with her position enabled [the
defendant] to file the complaint.  As such, no reasonable
jury could find that she was acting under color of law.

Id.

Here, the allegations are similarly deficient.  There are
no allegations indicating Defendants Melleby and Tull were (1)
under the direction of Eastern, the District, or the Board, (2)
used their position to effectuate the filing, (3) usually
reported criminal conduct of this nature, or (4) their positions
enabled them in some special way to report Plaintiff's behavior.
Thus, regardless of whether the report was false, it is clear no
state action was involved.

Plaintiff also alleges conspiracy under § 1983.  The § 1983
conspiracy is deficient because Plaintiff is not relieved of his
duty to allege state action when alleging a conspiracy under §
1983.  See Miles v. Twp. of Barnegat, 343 F. App'x 841, 845 (3d
Cir. 2009) (discussing cases requiring state action by a member
of the conspiracy in order for liability to attach under §
1983).  Therefore, the § 1983 conspiracy case must also be
dismissed.

Finally, Plaintiff alleges a Monell claim.  Under this

claim, Plaintiff asserts "Defendants Melleby and Tull have final policy making authority on behalf of the High School and Board" and that Eastern and the "Board officially sanctioned, authorized, ratified, acquiesced in, or condoned the decision of the individual Defendants to unlawfully arrest Plaintiff." (Pl.'s Compl. ¶¶ 111-12.) In other words, the policy or custom to be considered for this Monell claim is the decision of Melleby and Tull to make a false statement to the police.

As with the other § 1983 claims, the Monell claim is similarly deficient. A Monell claim arises under § 1983. Lapella v. City of Atl. City, No. 10-2454 (JBS/JS), 2012 U.S. Dist. LEXIS 100327, at *10 (D.N.J. July 18, 2012) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)). Thus, again, it is subject to the state action requirement. See Fortnua's Cab Serv. v. City of Camden, 269 F. Supp. 2d 562, 565 (D.N.J. 2003) ("Without evidence of established government conduct depriving Plaintiffs of their rights, there is no requisite state action necessary for a due process violation.").

Even though it is clear Plaintiff has not alleged state action, it is not clear whether factual predicates exist which would allow Plaintiff to allege state action. Particularly, it is unclear to this Court whether Plaintiff could allege that Defendants Melleby and Tull's "usual job duties" involved

19

reporting criminal activity within a school by one of its students to the police.  Although the Court will dismiss Plaintiff's § 1983 claims, it will do so without prejudice. Plaintiff may move for leave to amend his complaint in this manner at an appropriate time.

## ii. The § 1985 Claim

Defendants argue that the § 1985 conspiracy claim should be dismissed because Plaintiff's allegations are merely conclusory. Plaintiff argues that his allegations sufficiently comply with § 1985 and the federal pleading requirements.  While the allegations contain some of the necessary detail, they are ultimately deficient.

The elements of a § 1985(3) claim are as follows:

> "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States."

Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006)

(quoting United Bhd. of Carpenters & Joiners v. Scott, 463 U.S.

825, 828-29 (1983)).[5]  In stating a § 1985(3) claim "a plaintiff

---

[5] The Court notes here that § 1985(3), unlike § 1983 does not require state action.  See Farber, 440 F.3d at 134-35 (citing Griffin v. Breckenridge, 403 U.S. 88, 101 (1971)) ("In Griffin, however, the Court reversed course and held that a § 1985(3) claim can reach private as well as public conspiracies that seek to deprive a class of equal protection of the laws or equal

must allege both that the conspiracy was motivated by
discriminatory animus against an identifiable class and that the
discrimination against the identifiable class was invidious."
Id. at 135 (citing Aulson v. Blanchard, 83 F.3d 1, 4-5 (1st Cir.
1996)).  Only certain classes allow a plaintiff to meet the
"invidious" requirement, including "race, sex, or mental
retardation."  Id. at 135.

It is clear that elements three and four are met here, as
the allegedly false report may qualify as an act in furtherance
of a conspiracy and the allegation of a false arrest clearly
alleges a deprivation of a constitutional right.  Elements one
and two present a closer question.  A part of element two is
clearly satisfied by the allegation of class-based
discrimination against an individual with a disability, here a
minor with autism.

But, whether there was a conspiracy and that conspiracy's
purpose is not sufficiently stated in Plaintiff's Complaint.
Plaintiff's only allegation concerning the content of the
conspiracy was that "[t]he actions of Melleby and Tull
constituted a conspiracy to violate the civil rights of
Plaintiff."  (Pl.'s Compl. ¶ 91.)  As a court in this District
has previously stated:

"It is not enough, however, for a plaintiff to make

_____

privileges under the laws.").

merely broad or conclusory allegations concerning the
existence of . . . a conspiracy . . . . Rather,
plaintiffs must allege with sufficient particularity
that the [defendants] reached some understanding or
agreement, or plotted, planned and conspired together,
to deprive plaintiffs of a federal right."

Hauptmann v. Wilentz, 570 F. Supp. 351, 375 (D.N.J. 1983)

(quoting Chicarelli v. Plymouth Garden Apartments, 551 F. Supp.

532, 539 (E.D. Pa. 1982)).  There is no allegation, conclusory

or otherwise, that Defendants (1) came to an agreement or (2)

what constituted the agreement.[6]  Accordingly, the Court will

dismiss the § 1985(3) claim, without prejudice.  Plaintiff may

move for leave to amend his complaint to remedy this deficiency

at an appropriate time.

### iii. The ADA Claim

Defendants argue a lack of state action also compels the

Court to dismiss Plaintiff's ADA claim.  More specifically,

Defendants argument is that the case law supporting dismissal of

the § 1983 claims supports dismissal of this ADA claim.

Plaintiff does not directly rebut this argument, but instead

focuses on how his Complaint has adequately pled the elements of

an ADA claim.  Plaintiff indirectly counters Defendants'

---

[6] The Court notes Plaintiff states in his opposition brief that
"Defendants agreed to remove Plaintiff from school by means of
making a false report to the police."  (Pl.'s Opp'n Br. 7.)
Plaintiff does not provide citation to where this assertion
resides in his Complaint, and upon review, the Court does not
find this allegation to be part of Plaintiff's Complaint.

argument by asserting Defendants were involved in Plaintiff's false arrest.

First, the Court will address Defendants analogy to § 1983's "state action" requirement. The ADA does not contain a "state action" requirement analogous to § 1983. While it does require that a "public entity" – a statutorily defined term which Defendants do not dispute is applicable to them – engage in the discrimination, Defendants have cited no case which would limit which actions fall within the purview of the ADA. In fact, whereas § 1983 has various judicially-created doctrines restricting its application, "the ADA is deliberately broad." Haberle v. Troxell, 885 F.3d 171, 179 (3d Cir. 2018). In fact, the Third Circuit stated "[t]he 'subjected to discrimination' phrase in Title II is 'a catch-all phrase that prohibits all discrimination by a public entity, regardless of the context.'" Id. at 180. The Court will not dismiss the ADA claim here on these grounds.

Second, the Court will address what appears to be a corollary of Defendants argument: because Defendants were not involved in the arrest of Plaintiff, they cannot be liable under the ADA. It does not appear that Plaintiff alleges Defendants actually brought Plaintiff to the ground, cuffed, search, and detained him. Plaintiff alleges Defendants made a false statement to the VPD which prompted these actions. While an

argument could be made that a true statement – whatever the
contents of that statement may be – would have led to the same
action by police, Defendants' argument here on causation is
deficient.  The Court must make all reasonable inferences in
favor of Plaintiff.[7]  Doing so here requires the Court to find
that Defendants were part of the causal chain, because that is
what has been plausibly alleged.  Accordingly, the Court will
not dismiss Plaintiff's ADA claim against Defendants.

   c. <u>The State Law Tort Claims</u>

   Defendants argue Plaintiff's state law tort claims (common
law false arrest, IIED, and NIED claims) must be dismissed as a
matter of law because they are barred by the New Jersey Tort
Claims Act ("NJTCA").  Defendants argue there are two reasons
these causes of actions are barred by the NJTCA: (1) Plaintiff
has not filed a notice of claim or requested permission to file
a late notice of claim and (2) Plaintiff's injury does not meet
the so-called "verbal threshold."  Plaintiff does not offer any
argument in opposition.  Nonetheless, the Court will consider
the merits of Defendants two arguments.

   Under New Jersey law, "[n]o action shall be brought against
a public entity or public employee . . . unless the claim upon

---

[7] As with the argument concerning the <u>Heck</u> doctrine, the argument
Defendants make concerning a breach in the chain of causation
because Plaintiff pled guilty cannot be considered as it is not
properly before the Court.

which it is based shall have been presented in accordance with the procedure set forth" within the NJTCA.[8] N.J. Stat. Ann. § 59:8-3. The procedure requires, in relevant part, the following:

> A claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the ninetieth day after accrual of the cause of action. After the expiration of six months from the date notice of claim is received, the claimant may file suit in an appropriate court of law. The claimant shall be forever barred from recovering against a public entity or public employee if:
>
> a. He failed to file his claim with the public entity within 90 days of accrual of his claim except as otherwise provided in section 59:8-9[.]

N.J. Stat. Ann. § 59:8-8. As is made clear by the NJTCA, failure to file a notice of claim within ninety days of accrual of a claim bars a plaintiff from bringing a tort claim against public entities or employees in court. Here, Defendants are correct: Plaintiff has provided no indication in his Complaint that he filed a notice of claim, much less within the statutorily prescribed period of ninety days.

Defendants are also correct that Plaintiff does not qualify for the narrow exception to the bar previously discussed. This Court, in its discretion, may allow a claimant to file a late

---

[8] Because Defendants are either county entities or county employees, it appears they would properly be considered public entities or employees.

notice within one year after the accrual of the cause of action. N.J. STAT. ANN. § 59:8-9. But, this may only be done when (1) the public entity or employee has not been substantially prejudiced and (2) the claimant has submitted affidavits that prove extraordinary circumstances relating to claimant's failure to file.[2] N.J. STAT. ANN. § 59:8-8. If the one-year limit has passed, a court is without discretion to allow late notice. Davis v. Twp. of Paulsboro, 371 F. Supp. 2d 611, 618 (D.N.J. 2005). Even assuming Plaintiff meets the above two elements and less than a year has elapsed, Plaintiff has made no application to the Court. Therefore, the Court may not grant Plaintiff permission to file a late notice of claim.

Furthermore, in order to properly state an NIED or IIED claim, a "verbal threshold" must be met under the NJTCA, which provides:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.

R.K. v. Y.A.L.E. Sch. Inc., No. 07-5918, 2009 WL 1066125, at *3 (D.N.J. Apr. 20, 2009) (citing N.J. STAT. ANN. § 59:9-2(d)).

---

[2] This Court has the discretion to permit late filings of torts within one year after accrual. See Webster v. Rutgers- N. J. Med. Sch., No. 15-08689, 2017 WL 3399996, at *3 (D.N.J. Aug. 4, 2017).

Humiliation, anguish, mental pain, depression, and
emotional distress, are only considered "pain and suffering,"
which categorically do not meet the verbal threshold.  See
Gretzula v. Camden Cty. Tech. Sch. Bd. Of Educ., 965 F. Supp. 2d
478, 490 (D.N.J. 2013) (stating a school board employee's IIED
claim of mental anguish and emotional distress was barred); PBA
Local No. 38 v. Woodbridge Police Dept., 832 F. Supp. 808, 821
(D.N.J. 1993) (finding injuries consisting of humiliation,
mental pain and anguish "fall within the purview of pain and
suffering"); Mercado v. State, 515 A.2d 804, 808 (N.J. Super.
Ct. Law. Div. 1985) ("[E]motional stress, distress, anxiety, and
embarrassment . . . provide no basis for recovery . . . under
the Tort Claims Act.").

The Court finds Plaintiff's Complaint fails to provide any
allegations concerning permanent injury that would meet the
verbal threshold.  Moreover, there are no allegations concerning
any medical treatment, if any, Plaintiff required as a result of
the incidents involved in this case.  Therefore, the tort claims
found at Counts V, VI, and VII will be dismissed.

### D. Motion to Amend Standard

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "a
party may amend its pleading only with the opposing party's
written consent or the court's leave."  Rule 15(a)(2) further
"requires that leave to amend the pleadings be granted freely

'when justice so requires.'" <u>Long v. Wilson</u>, 393 F.3d 390, 400

(3d Cir. 2004) (citing Fᴇᴅ. R. Cɪᴠ. P. 15(a)) ("We have held that

motions to amend pleadings should be liberally granted.").

Thus, "absent undue or substantial prejudice, an amendment

should be allowed under Rule 15(a) unless denial [can] be

grounded in bad faith or dilatory motive, truly undue or

unexplained delay, repeated failure to cure deficiency by

amendments previously allowed or futility of amendment." <u>Long

v. Wilson</u>, 393 F.3d 390, 400 (3d Cir. 2004) (internal

quotations, citations, and emphasis omitted); <u>see also</u> <u>Haynes v.

Moore</u>, 405 F. App'x 562, 564 (3d Cir. 2011) (noting that even

though leave to amend under Rule 15 should be freely given, "a

district court may exercise its discretion and deny leave to

amend on the basis of undue delay, bad faith, dilatory motive,

prejudice, or futility."). It is under this standard that the

Court considers Plaintiff's Amended Motion to Amend.

### E. Plaintiff's Amended Motion to Amend

Plaintiff has also cross-moved for leave to amend its

Complaint. Before considering the merits of the motion, the

Court must briefly discuss the relevant procedural history. On

November 30, 2018, Defendants filed their Motion to Dismiss,

which was discussed <u>supra</u>. On January 15, 2019, Plaintiff filed

his opposition brief and then separately filed the Motion to

Amend. The Motion to Amend requested leave to amend to include

"relief for attorney fees [sic] sought in damages as to Counts
I-IV and Counts IX-XI." (Pl.'s Mot. to Am. 1.) On January 28,
2019, Defendants filed a consolidated reply brief and opposition
to Plaintiff's Motion to Amend.

On February 12, 2019, Plaintiff's counsel, Mr. Georgios
Farmakis, filed a letter on the docket stating that the Motion
to Amend included a proposed amended complaint that was an
"attorney-work product draft, and not the actual proposed
Amended Complaint." (Pl.'s Feb. 12, 2019 Letter 1.) In
response, this Court entered a Text Order directing Plaintiff to
file an amended cross-motion to amend and allowing Plaintiff to
pursue whatever relief necessary to remedy the inadvertent
disclosure of attorney work product. On March 25, 2019,
Plaintiff filed his Amended Motion to Amend and on April 22,
2019, Defendants filed their opposition. In his April 29, 2019
reply brief, Plaintiff requests the Court disregard the Motion
to Amend and only consider the Amended Motion to Amend. Based
on this procedural history and Plaintiff's concession, the Court
will deny, without prejudice, Plaintiff's Motion to Amend and
will only consider Plaintiff's Amended Motion to Amend.[9]

---

[9] The Court notes that Defendants object to Plaintiff's first
Cross-Motion to Amend under Local Rule of Civil Procedure 7.1(h)
because Plaintiff filed two briefs instead of a combined brief.
Although technically not in the form demanded by Rule 7.1(h),
the briefs do not exceed the page limit and were filed on the
same day so as to meet the substantive requirements of the rule.

Plaintiff's Amended Motion to Amend requests – on its face – the same relief as requested previously: leave to file an Amended Complaint which includes a request for attorneys' fees as to Counts I-IV and IX-X.  Defendants' opposition shows, however, that other relief has been added to the proposed Amended Complaint that is not explicated in the Amended Motion to Amend.  Defendants cite the following undisclosed additions to Plaintiff's proposed Amended Complaint:

- A request for "[i]njunctive relief for an order requiring Plaintiff to immediately return to the High School" under Count I (Pl.'s Proposed Am. Compl. ¶ 84.b.);

- A request for "actual damages" and a removal of the request for "[i]njunctive relief for an order requiring Defendants to design an IEP for Plaintiff" under Count X (Pl.'s Proposed Am. Compl. ¶ 129.b.; Pl.'s Compl. ¶ 129.b.).

Defendants argue the addition of these undisclosed amendments "suggest inappropriate motives."  (Defs.' Reply Br. 2.) Plaintiff argues Defendants case law is inapplicable and there is no inappropriate motive.

---

Plaintiff is reminded to follow the Federal and Local Rules of Civil Procedure in all filings before the Court.  The Court also notes for the record that Defendants objection to Plaintiff's addition of an New Jersey Law Against Discrimination ("NJLAD") claim in the Motion to Amend is now moot.  Since the Amended Motion to Amend does not contain an NJLAD claim, this argument need not be addressed by the Court.

Based on this Court's decision on Defendants' Motion to Dismiss, any proposed amendments to Counts I, II, or III will be denied, without prejudice as those claims have been dismissed, without prejudice. Therefore, Defendants' argument as to the undisclosed addition to Count I is moot. The addition of attorneys' fees as to Counts IV, IX, and X will be granted, as the Rule 15 standard advises that amendments shall be freely given and these additions were specifically requested.

Remaining is Plaintiff's addition of a request for actual damages and removal of a request for injunctive relief under Count X. That relief will not be granted because Plaintiff has not requested it. Plaintiff's Amended Motion to Amend does not request an addition or deletion in this respect, but rather is confined to the issue of attorneys' fees. It is axiomatic that the Court cannot grant relief which is not requested. Plaintiff, if he so desires, may move at an appropriate date to amend his Amended Complaint in this respect if he wishes to do so.

Accordingly, Plaintiff will be directed to file an Amended Complaint within a specified period of time as directed by this Court's Order. The Amended Complaint should excise any claims which have been dismissed by this Court and should only add the attorneys' fees requests that were expressly granted by this Court.

## CONCLUSION

For the reasons set forth in this Opinion, Defendants'
Motion to Dismiss will be granted, in part, and denied, in part.
Plaintiff's Motion to Amend will be denied, without prejudice.
Plaintiff's Amended Motion to Amend will be granted, in part,
and denied, in part, without prejudice.

An appropriate Order will be entered.


Date: August 28, 2019                    s/ Noel L. Hillman
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.